JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Thomas M. Weber and Terrance M. Weber

### DEFENDANTS

Dan Morphy Auctions, LLC, Morphy Auctions Las Vegas, and Morphy Firearms, LLC

**(b)** County of Residence of First Listed Plaintiff    Yavapai, Arizona
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Lancaster, PA
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Dennis L. Abramson, Esq. (Abramson & Abramson, LLC)
111 Presidential Blvd., #228, Bala Cynwyd PA 19004 (610) 664-5700

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question *(U.S. Government Not a Party)*
- ☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**    **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane    ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product      Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument |      Liability    ☐ 367 Health Care/ | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment    & Enforcement of Judgment | ☐ 320 Assault, Libel &      Pharmaceutical      Slander      Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'      Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted    Student Loans    (Excludes Veterans) |      Liability    ☐ 368 Asbestos Personal      Injury Product      Liability | | ☐ 835 Patent - Abbreviated New Drug Application ☐ 840 Trademark | ☐ 460 Deportation ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment    of Veteran's Benefits | ☐ 340 Marine    ☐ 345 Marine Product    **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits |      Liability    ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards      Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☒ 190 Other Contract | ☐ 350 Motor Vehicle    ☐ 371 Truth in Lending | ☐ 720 Labor/Management | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle    ☐ 380 Other Personal      Product Liability      Property Damage |      Relations | ☐ 863 DIWC/DIWW (405(g)) |      Exchange |
| ☐ 196 Franchise | ☐ 360 Other Personal    ☐ 385 Property Damage      Injury      Product Liability | ☐ 740 Railway Labor Act ☐ 751 Family and Medical | ☐ 864 SSID Title XVI ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions ☐ 891 Agricultural Acts |
| | ☐ 362 Personal Injury -      Medical Malpractice |      Leave Act ☐ 790 Other Labor Litigation | | ☐ 893 Environmental Matters ☐ 895 Freedom of Information |
| **REAL PROPERTY** | **CIVIL RIGHTS**    **PRISONER PETITIONS** | ☐ 791 Employee Retirement | **FEDERAL TAX SUITS** |      Act |
| ☒ 210 Land Condemnation | ☐ 440 Other Civil Rights    **Habeas Corpus:** |      Income Security Act | ☐ 870 Taxes (U.S. Plaintiff | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting    ☐ 463 Alien Detainee | |      or Defendant) | ☐ 899 Administrative Procedure |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment    ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party |      Act/Review or Appeal of |
| ☐ 240 Torts to Land | ☐ 443 Housing/      Sentence | |      26 USC 7609 |      Agency Decision |
| ☐ 245 Tort Product Liability |      Accommodations    ☐ 530 General | | | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities -    ☐ 535 Death Penalty      Employment    **Other:** | **IMMIGRATION** | |      State Statutes |
| | ☐ 446 Amer. w/Disabilities -    ☐ 540 Mandamus & Other      Other    ☐ 550 Civil Rights | ☐ 462 Naturalization Application ☐ 465 Other Immigration | | |
| | ☐ 448 Education    ☐ 555 Prison Condition           ☐ 560 Civil Detainee -           Conditions of           Confinement |      Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
28 U.S.C. Sec. 1332
Brief description of cause:
Breach of consignment agreement and conversion of consigned and bailed property

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $   return of   150,000 + property

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____ DOCKET NUMBER _____

DATE
01/02/2019

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

5:19CV 008

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: 401 S. Highway 69, Dewey, Arizona

Address of Defendant: 200 North Reading Road, Denver, Lancaster County, PA

Place of Accident, Incident or Transaction: Denver, PA

---

**RELATED CASE, IF ANY:**

Case Number: _____   Judge: _____   Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes ☐   No ☐

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes ☐   No ☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?   Yes ☐   No ☐

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes ☐   No ☐

I certify that, to my knowledge, the within case ☐ is ☒ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 1/2/2018     *Dennis L. Abramson*     88129
                    *Attorney-at-Law / Pro Se Plaintiff*     *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.    Federal Question Cases:**

☐ 1.  Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2.  FELA
☐ 3.  Jones Act-Personal Injury
☐ 4.  Antitrust
☐ 5.  Patent
☐ 6.  Labor-Management Relations
☐ 7.  Civil Rights
☐ 8.  Habeas Corpus
☐ 9.  Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
        *(Please specify):* _____

**B.    Diversity Jurisdiction Cases:**

☒ 1.  Insurance Contract and Other Contracts
☐ 2.  Airplane Personal Injury
☐ 3.  Assault, Defamation
☐ 4.  Marine Personal Injury
☐ 5.  Motor Vehicle Personal Injury
☐ 6.  Other Personal Injury *(Please specify):* _____
☐ 7.  Products Liability
☐ 8.  Products Liability – Asbestos
☐ 9.  All other Diversity Cases
        *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, *Dennis L. Abramson*, counsel of record *or pro se plaintiff*, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☑ Relief other than monetary damages is sought.

JAN - 2 2019

DATE: 1/2/2019     *Dennis L. Abramson*     88129
                    *Attorney-at-Law / Pro Se Plaintiff*     *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)



# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA
### CASE MANAGEMENT TRACK DESIGNATION FORM

|  |  |  |
|---|---|---|
| v. | : | CIVIL ACTION |
|  | : |  |
|  | : | NO. 5:19cv008 |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.    ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.    ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court.  (See reverse side of this form for a detailed explanation of special management cases.)    ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.    (✓)

| | | |
|---|---|---|
| 1/2/2019 | Dennis L. Abramson | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 610-664-5700 | 610-664-3770 | dabramson@theabramsonfirm.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

JAN - 2 2019

MAK

## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS M. WEBER and<br>TERRANCE M. WEBER,<br>    *Plaintiffs*<br><br>    v.<br><br>DAN MORPHY AUCTIONS, LLC,<br>MORPHY AUCTIONS LAS VEGAS, and<br>MORPHY FIREARMS, LLC<br>    *Defendants* | Case No.: 5:19cv008 |

## PLAINTIFFS' COMPLAINT

### Nature of Action

1.    This case concerns the acts and omissions of entities and individuals who were entrusted with Plaintiffs' collectibles and who, intentionally and recklessly, damaged, converted, and otherwise misused, mislaid, and misappropriated the property entrusted to them, all in violation of Plaintiffs' property rights.

### Parties

2.    Plaintiff, THOMAS M. WEBER ("Tom"), is an adult individual and citizen of the State of Arizona, residing at 401 S. Highway 69, Dewey, Arizona.

3.    Plaintiff, TERRANCE M. WEBER ("Terry"), is an adult individual and citizen of the State of Arizona, residing at 401 S. Highway 69, Dewey, Arizona.

4.    Defendant, DAN MORPHY AUCTIONS, LLC ("DMA"), is a Pennsylvania limited liability company with a registered address of 356 Millpond Drive, Lilitz, Lancaster County, Pennsylvania, and which maintains its principal place of business at 200 North Reading Road, Denver, Lancaster County, Pennsylvania 17517.

1

5.      Defendant, MORPHY FIREARMS, LLC ("MFA"), is a Pennsylvania limited liability company that has a registered address of, and maintains its principal place of business at, 200 North Reading Road, Denver, Lancaster County, Pennsylvania 17517.

6.      Defendant, MORPHY AUCTIONS LAS VEGAS ("MALV"), is, upon information and belief, a fictitiously named entity that is an affiliate or subsidiary of DMA and/or MFA, with a registered address at 200 North Reading Road, Denver, Lancaster County, Pennsylvania 17517, and which maintains its principal place of business at 4520 Arville Street #1A, Las Vegas, Nevada, 89103.

### Jurisdiction and Venue

7.      This Court has original jurisdiction over Plaintiffs' claims under 28 U.S.C. §1332, based upon the diversity of citizenship of the parties and the amount in controversy being in excess of $75,000, exclusive of costs and interest.

8.      Venue for this action properly lies in this district pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claim occurred in Lancaster County, which is within this judicial district.

### Substantive Allegations Common to All Counts

9.      At all times relevant hereto, Defendants were engaged in the antiques and collectible auction trade, including the consignment and auction of antique and collectible firearms.

10.     At all times relevant hereto, Defendants held themselves out as experts and leaders in the field of the antique and collectible firearms auction trade and all matters appurtenant thereto, including but not limited to the packaging, shipping, preservation, marketing, auctioning, and selling of antique and collectible firearms.

2

11.     Plaintiffs were, at all times relevant hereto, joint owners of a large collection of antique and collectible firearms (most notably, antique Daisy® air rifles and BB guns) and other antiques and collectibles, some of them dating as far back as 1880.

12.     In or around early January of 2017, Plaintiffs resolved to consign and list for auction and sale certain of their antiques and collectibles, including approximately 1,241 collectible BB guns and firearms, as well as other items related thereto (the "Weber Collection").

13.     In or around early January of 2017, Plaintiffs met with Defendants' president and principal, Dan Morphy, who, along with a female representative from Defendants, visited Plaintiffs at their ranch in Dewey, Arizona and viewed and photographed the Weber Collection.

14.     On January 5, 2017, Plaintiffs entered into a "Sellers Agreement – Sale of Personal and Chattel Property" agreement with Defendants (the "Consignment Agreement"), which agreement sets forth the essential terms and conditions under which Plaintiffs agreed to consign the Weber Collection to Defendants and, *inter alia*, the manner in which Defendants were to conduct themselves during the performance of the Consignment Agreement.  A true and correct copy of the fully executed Consignment Agreement is attached hereto as Exhibit "A".

15.     In violation of Pennsylvania law, the Consignment Agreement does not contain any mention of Defendants' Pennsylvania auctioneer's license or registration number.

16.     Following the execution of the Consignment Agreement, on a Thursday in mid-January 2017, Defendants caused several of their agents and representatives to travel to Plaintiffs' Dewey, Arizona ranch, whereupon those agents packaged the Weber Collection for transport.

17.     Defendants have written policy manuals describing in explicit detail the manner in which items – including antiques and firearms - are to be packed by their agents and representatives so as not to damage items during transport.

18.     At Plaintiffs' ranch, with Plaintiffs observing, Defendants, over the course of a two (2) day period, handled the Weber Collection with extreme care, meticulously packing, packaging, and loading the Weber Collection onto two (2) vehicles – one a gooseneck trailer attached to a GMC Denali truck owned by Defendants, and the other Penske® box truck rented by Defendants.

19.     At no point prior to departing Plaintiffs' ranch did Defendants or any of their representatives create or prepare an inventory of the items being packed, packaged, and loaded for transport.

20.     Defendants planned on performing an inventory of, and photographing, the consigned Weber Collection upon unloading its contents at Defendants' facility.

21.     The vehicles transporting the Weber Collection departed the Plaintiffs' ranch on a Friday in mid-January 2017 and arrived at Defendants' Las Vegas warehouse - located at 4520 Arville Street - in the evening on that same date.

22.     Based upon their experience of operating and occupying the premises located at 4520 Arville Street, Defendants knew that the area in which their warehouse was situated was a high crime area, with Defendants themselves having been the victim of burglaries, break-ins, and theft of property at that location.

23.     Upon Defendants' arrival with the Weber Collection at their Las Vegas warehouse, the GMC truck to which the gooseneck trailer containing components of the Weber Collection was attached was parked and secured inside Defendants' warehouse, while the

4

Penske® truck containing the remaining components of the Weber Collection was, for no apparent reason, left outdoors and unsecured.

24.    At some point in time between the Friday evening the Weber Collection arrived at the Defendants' warehouse and the morning of the following Monday, the Penske® truck, which had been parked on Defendants' premises and which held scores if not hundreds of items from the Weber Collection, was broken into.

25.    In connection with the break-in/burglary, several bundles of items from the Weber Collection were removed from the Penske® truck and taken away from the premises by the thieves.

26.    The theft of the Weber Collection that occurred on Defendants' premises was recorded on Defendants' video surveillance security cameras.

27.    Defendants withheld from Plaintiffs the fact that the Penske® truck had been broken into and portions of its contents stolen, and instructed their employees not to inform Plaintiffs of the incident or the theft.

28.    On or around January 25, 2017, representatives of Defendants filed a police report with the Las Vegas Police Department in connection with the theft.

29.    Plaintiffs were not informed of the police report and, upon information and belief, the Las Vegas Police Department was not informed that property stolen from Defendants' premises was the property of Plaintiffs.

30.    Upon information and belief, Defendants filed a claim of loss with their insurance carrier(s).  The extent of the loss(es) claimed in connection with Defendants' insurance claim(s) is unknown at this time.

5

31.     Upon information and belief, Defendants received proceeds from their insurance carrier(s) with respect to the loss claim filed in connection with the burglary of the Penske® truck containing components of the Weber Collection.

32.     Defendants have never remitted, nor offered to remit, any insurance proceeds to Plaintiffs.

33.     Subsequent to the January 2017 theft, the remaining components of the Weber Collection (*i.e.,* the items transported in the gooseneck trailer and the items not stolen out of the Penske® truck) were unloaded to prepare them for upcoming auctions, while the balance of the collection was transported to Defendants' primary auction house in Denver, Pennsylvania.

34.     During the summer of 2017 and concluding in late 2017, Defendants purported to organize, photograph, publish, market, and prepare for auction, the Weber Collection.

35.     Upon the initial marketing of the Weber Collection, Plaintiffs alerted Defendants to their concerns about the manner in which the Weber Collection was being sorted, advertised, and auctioned.

36.     Plaintiffs and Defendants also entered into additional agreements with respect to several of the Weber Collection items, including an agreement whereby, despite Defendants' policy not to list items of the type being sold with reserves, four (4) items designated by Plaintiffs would be listed with, and sold subject to, reserve prices.

37.     From the period May 2017 to January 2018, various items from the Weber Collection were sold at auction by Defendants.

38.     Despite their obligation to use their purported professional skill, knowledge, and experience, Defendants failed to do so and further failed to exercise the care of professionals in the industry when they:

6

a.   separated collections where inappropriate to do so, thus devaluing the items offered and sold at auction;

b.   failed to emphasize certain characteristics and aspects of items to maximize interest and sale price;

c.   inaccurately described or characterized items, which resulted in diminishing their desirability, actual value, and sale price;

d.   offered for sale rare, limited edition items simultaneously and/or too close in time to one another, thus devaluing the items offered or sold at auction;

e.   contrary to prior representations and promises to do so, failed to provide catalogs to individuals known to be interested in the types of collectibles being offered for sale;

f.   lost, mislaid, or permitted the misappropriation or theft of items entrusted to them by Plaintiffs;

g.   as set forth below, when Plaintiffs demanded the return of unsold items, fraudulently attempted to pass off items to Plaintiffs that were not the items consigned to them by Plaintiffs;

h.   other conduct, the full extent of which is not yet known.

39.   Furthermore, in the course of auctioning items from the Weber Collection, Defendants failed to conform their conduct to the representations and promises made to Plaintiffs.

40.   For example, an 1888 Daisy #1 First Model wire stock gun -- one of the four (4) items Defendants agreed not to sell for less than an agreed upon reserve price -- was sold at auction for less than the agreed-upon $12,000.00 reserve price.  A 1940 Red Ryder copper band BB gun with a reserve price agreed to be set at $12,000.00 was sold at auction by Defendants for $1,900.00.

41.   By way of further example, with respect to forty-six (46) Daisy® BB guns, Defendants failed to offer the guns for sale with their original boxes (which had been provided to them by Plaintiffs), thus substantially reducing the sale price that could have been attained.

7

42.     In addition, Defendants failed to appropriately and accurately describe various items entrusted to them, including a Daisy® 1923 Magnum first model pump action BB gun and a 1914 Vintage Daisy® museum piece (which included a valuable Daisy® Model 25 – the first Daisy pump-action model), which items were mischaracterized and inaccurately described, resulting in a sale for far less than items' estimated market and/or actual value.

43.     At the conclusion of the various auctions, Plaintiffs, as was their right, requested Defendants package and ship to them all unsold items from the Weber Collection.

44.     In or around the first of quarter of 2018, Defendants purported to pack and package the unsold Weber Collection items to return them to Plaintiffs, at Plaintiffs' expense.

45.     Upon receipt of the items return-shipped to them, Plaintiffs observed that:

    (a)     all the items were poorly packed and packaged - far below the standard of packing and packaging they observed Defendants' representatives undertake when packing the items for transport in January of 2017;

    (b)     many of the items returned were damaged, some to such an extent that they were beyond repair and rendered worthless; and

    (c)     many of the items included in the shipment were items that were not part of the Weber Collection and were never owned by Plaintiffs.

46.     In addition, multiple items from the Weber Collection entrusted to Defendants that were purportedly not sold at auction were never returned to Plaintiffs, including:

    a.   a rare and valuable pin gun collection, with display and collectible book;

    b.   a 1960's era Daisy® gunrack;

    c.   piano movers;

    d.   a 1950's era Daisy® gun case;

    e.   an early 1950's Hoppy toybox;

    f.   a Ford Model T Toolbox, with tools;

8

    g.   a Daisy® #1 First Model 1888 wire stock gun;

    h.   a 1940 Red Ryder copper band BB gun;

    i.   Two (2) 1880 Quackenbush guns;

    j.   a 1950's era Daisy® "ping-pong" slide gun;

    k.   a 1940's era Daisy® pop gun;

    l.   a 1964 Daisy® Model 21 side by side double-barrel gun;

    m.   a Daisy® "Second Model" 1890 wirestock gun marked "Plymouth Iron Windmill Company"; and

    n.   a 1938 King Red Ryder prototype (Lot 766).

47.    Despite demand, Plaintiffs have failed to return or account for these and scores of other items that were not sold at auction and never returned.

48.    Among the multiple items from the Weber Collection entrusted to Defendants that were purportedly not sold at auction and that were returned damaged included a 1925 Lee® saddle; a 1950's era Daisy® BB gun (damaged beyond repair); and a mid-1950's Bunt Line long barrel gun (damaged beyond repair).

49.    Despite several items from the Weber Collection reported as having been sold, Plaintiffs have never received any of the proceeds from the sale of these items, including a late 1920's/early 1930's Venus Woman Clock.

50.    By engaging in the foregoing actions and omissions and conducting themselves as set forth above, Defendants:

    a.   Failed to exercise the skill and knowledge normally associated with the auctioneering profession;

    b.   Failed to act in good faith and deal fairly with Plaintiffs in their performance of the Consignment Agreement;

9

c.      Failed to use their professional skills, knowledge, and experience in preparing for and conducting the auctions of the Weber Collection items;

d.      Abused their discretion with respect to the manner in which lots were grouped or separated and the manner in which the auctions were conducted;

e.      Failed to perform as agreed upon by the parties, including with respect to reserve prices on certain items and the promotion and marketing of items;

f.      Failed to provide inventories and accountings to Plaintiffs, despite being obligated to do so pursuant to contract and law;

g.      Failed to exercise commercially reasonable care in the care, handling, security, and preservation of the Weber Collection, resulting in the theft of multiple items and the mislaying or misappropriation of multiple items;

h.      Failed to properly inventory and account for the items received on consignment;

i.      Failed to exercise commercially reasonable care in the handling, preservation, packing, packaging, and return shipping of unsold Weber Collection items that were to be returned to Plaintiffs;

j.      Failed to comply with the laws of the Commonwealth of Pennsylvania imposed upon licensed and registered auctioneers;

k.      Failed to exercise commercially reasonable care of the items entrusted to them;

l.      Failed to promptly inform Plaintiffs of the theft of property entrusted to them as bailees;

m.      Failed to remit to Plaintiffs insurance proceeds believed to have been received by Defendants in connection with the Penske® truck break-in and the theft of Plaintiffs' property entrusted to Defendants.

n.      When purporting to return Plaintiffs unsold property to them, intentionally attempted to pass off on Plaintiffs the property of another, knowing the property was not Plaintiffs, with the intent of deceiving Plaintiffs into relying on their representations that the property was Plaintiffs; and

o.      Other failures to conform their actions to their obligations under the law and the Consignment Agreement, including addendums and amendments thereto, and failures to disclose material facts where there existed a duty to

10

do so in order to deceive Plaintiffs, all to deprive Plaintiffs of their property and in wanton disregard of Plaintiffs' property rights.

51.     As a result of Defendants' conduct as set forth above, Plaintiffs have incurred substantial harm, including:

a.     Loss of the value of the unique goods entrusted to Defendants that were lost, stolen, misappropriated, or otherwise damaged by Defendants;

b.     Costs incurred or to be incurred to repair the unique goods entrusted to Defendants and which Defendants damaged or permitted to be damaged by their conduct;

c.     Loss of the profits that would have been realized had Defendants not engaged in the conduct outlined above;

d.     Expenses incurred in connection with Plaintiffs' performance under the Consignment Agreement;

e.     Other harm, the full extent of which is not yet known.

## COUNT ONE
### Breach of Contract – Consignment Agreement
### Plaintiffs v. Defendants

52.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as though set forth fully herein.

53.     At all times relevant hereto, Plaintiffs materially performed all covenants they were required to perform pursuant to the Consignment Agreement.

54.     The conduct engaged in by DMA, MALV, and/or MFA, as set forth above, constitutes material breaches of the Consignment Agreement, including but not limited to a breach of the implied covenant of good faith and fair dealing.

55.     As a proximate result of DMA's, MALV's, and MFA's breaches of the Consignment Agreement, Plaintiffs have suffered the substantial harm outlined above.

11

56.     For the items DMA, MALV, and/or MFA failed to return to Plaintiffs, Defendants DMA, MALV, and MFA are strictly liable.

WHEREFORE, Plaintiffs Thomas Weber and Terry Weber demand judgment in their favor and against Defendants Dan Morphy Auctions, Inc., Morphy Auctions Las Vegas, and Morphy Firearms, LLC, jointly and severally, for damages in an amount to be determined at trial but not less than $150,000.00 as compensatory damages, together with pre- and post-judgment interest thereon, the return of all property belonging to Plaintiffs in Defendants' possession, plus costs and expenses of suit to the extent recoverable, and for such other relief as this Court deems just and proper under the circumstances.

### COUNT TWO
### Breach of Bailment – Strict Liability
### Plaintiffs v. Defendants

57.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as though set forth fully herein.

58.     When Defendants took possession of the Weber Collection from the Plaintiffs, a bailment was created.

59.     For those items Defendants accepted as bailees but failed to return, Defendants are strictly liable.

60.     By conducting themselves as set forth above, Defendants violated and breached the bailment arrangement between and among themselves, on the one hand, and Plaintiffs, on the other.

61.     As a proximate result of Defendants' failure to return to Plaintiffs' any and all property entrusted to them but not sold and the proceeds remitted per the Consignment Agreement, Plaintiffs have suffered the substantial harm outlined above.

62.     To the extent it is held that the terms of the Consignment Agreement foreclose Plaintiffs from recovering against Defendants in connection with this Count Two, then Plaintiffs assert this Count Two against Defendants in the alternative, and only to the extent it is determined that material provisions of the Consignment Agreement for which Plaintiffs claim breach are deemed unenforceable as to Plaintiffs, DMA, MALV, and/or MFA.

WHEREFORE, Plaintiffs Thomas Weber and Terry Weber demand judgment in their favor and against Defendants Dan Morphy Auctions, Inc., Morphy Auctions Las Vegas, and Morphy Firearms, LLC, jointly and severally, for damages in an amount to be determined at trial but not less than $150,000.00 as compensatory damages, together with pre- and post-judgment interest thereon, the return of all property belonging to Plaintiffs in Defendants' possession, plus costs and expenses of suit to the extent recoverable, and for such other relief as this Court deems just and proper under the circumstances.

### COUNT THREE
### Negligence by Bailee
### Plaintiffs v. Defendants

63.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as though set forth fully herein.

64.     When Defendants took possession of the Weber Collection from the Plaintiffs, a bailment was created.

65.     Because the bailment accepted by Defendants was for the mutual benefit of Plaintiffs and Defendants, the bailees (*i.e.*, Defendants) were required to exercise reasonable and ordinary care, liable to the bailors (*i.e.*, Plaintiffs) for their negligence in caring for the bailed property in their possession.

13

66.     By conducting themselves as set forth above, Defendants violated and breached the duty of care owed to Plaintiffs.

67.     As a proximate result of Defendants' breach of the duty of care owed, Plaintiffs have suffered the substantial harm outlined above.

68.     To the extent it is held that the terms of the Consignment Agreement foreclose Plaintiffs from recovering against Defendants in connection with this Count Three, then Plaintiffs assert this Count Three against Defendants in the alternative, and only to the extent it is determined that material provisions of the Consignment Agreement for which Plaintiffs claim breach are unenforceable as to Plaintiffs, DMA, MALV, and/or MFA.

WHEREFORE, Plaintiffs Thomas Weber and Terry Weber demand judgment in their favor and against Defendants Dan Morphy Auctions, Inc., Morphy Auctions Las Vegas, and Morphy Firearms, LLC, jointly and severally, for damages in an amount to be determined at trial but not less than $150,000.00 as compensatory damages, together with pre- and post-judgment interest thereon, the return of all property belonging to Plaintiffs in Defendants' possession, plus costs and expenses of suit to the extent recoverable, and for such other relief as this Court deems just and proper under the circumstances.

### COUNT FOUR
### Conversion
### Plaintiffs v. Defendants

69.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as though set forth fully herein.

70.     By conducting themselves as aforesaid with respect to the items in the Weber Collection not returned or returned but rendered worthless due to Defendants' conduct, as well as those items sold below agreed upon reserve prices, as well as items that were sold but for which

14

the sale proceeds were not delivered to Plaintiffs, Defendants intentionally exercised control over the items and sales proceeds in such a manner that deprived Plaintiffs of their right to those items and proceeds and interfered with Plaintiffs' rights to those items and proceeds without Plaintiffs' consent and without lawful justification.

71.     Under the circumstances, good faith, fair dealing, commercial reasonableness, and their position vis-à-vis Plaintiffs as Plaintiffs' agents and/or fiduciaries, Defendants, at all times relevant hereto, had the affirmative duty to disclose to Plaintiffs that certain of Plaintiffs items from the Weber Collection consigned to them and in their possession as bailees were taken/stolen from Defendants in January of 2017.

72.     Moreover, when Defendants intentionally attempted to pass off to Plaintiffs some 220 rifles as the Plaintiffs' property (simultaneously charging Plaintiffs for the shipping costs of same), Defendants made a representation material to the transaction at hand with knowledge of its falsity or, at best, recklessness as to its truth or falsity.

73.     Defendants calculated to deceive Plaintiffs when they failed to disclose to Plaintiffs that scores if not hundreds of items from the Weber Collection with which Plaintiffs had been entrusted were stolen, and by attempting to pass off on Plaintiffs items that they represented belonged to Plaintiffs, but which did not, all to conceal from Plaintiffs the Defendants' wrongful conduct.

74.     Defendants' conduct constitutes conversion.

75.     As a proximate cause of Defendants' conversion, Plaintiffs have suffered the substantial damages set forth above.

76.     Defendants' conduct, which included a knowing and intentional failure to disclose material facts when there was a duty to do so and a knowing and intentional attempt to defraud

Plaintiffs by passing off items returned as the property of Plaintiffs when they clearly were not, was outrageous and in wanton disregard of Plaintiffs' rights, thus warranting an award to Plaintiffs of punitive damages.

WHEREFORE, Plaintiffs Thomas Weber and Terry Weber demand judgment in their favor and against Defendants Dan Morphy Auctions, Inc., Morphy Auctions Las Vegas, and Morphy Firearms, LLC, jointly and severally, for damages in an amount to be determined at trial but not less than $150,000.00 as compensatory damages, together with pre- and post-judgment interest thereon, plus punitive damages in an amount not less than $100,000.00, plus the return of all property belonging to Plaintiffs in Defendants' possession, plus an order disgorging Defendants of all ill-gotten gains (including insurance proceeds), plus attorneys' fees, costs and expenses of suit to the extent recoverable, and for such other relief as this Court deems just and proper under the circumstances.

ABRAMSON & ABRAMSON, LLC

By: _____
DENNIS L. ABRAMSON, ESQ.
111 Presidential Blvd., Suite 228
Bala Cynwyd, PA 19004
dabramson@theabramsonfirm.com
(610) 664-5700
*Attorneys for Plaintiffs,*
*Thomas and Terrance Weber*

Date: January 2, 2019

16

EXHIBIT "A"



# — SELLERS AGREEMENT —
*Sale of Personal and Chattel Property*

*Agreement for Auction Sale of Personal and Chattel Property between Dan Morphy Auctions, LLC;*
*Morphy Auctions Las Vegas, and Morphy Firearms, LLC; hereinafter known as DMA, and the Consignor*

Consignor Name (First, Middle Initial, Last) ___TOM  WEBER / Jerry Wabe-Webber___

Address: ___401 S Hwy 21___

City: ___Eloy___     State: ___AZ___  Zip: ___85231___

Home: (___) ___748 1759___  Cell:(   )___    Email: ___Terry/Weber1@magmail.com___   ___Tom's Full Time___

Commission Rate: ___15%___     Consignor Expenses: ___1/2 liability/split Shipping___

Auction Date: ___Sept 11+12+13 2017___  Auction Location: ___Las Vegas, NV/SPBA___

Special Clauses: _____

_____

**All of the terms set forth below govern, are incorporated into and made part of this Agreement.**

## TERMS AND CONDITIONS/COMPLIANCE

DMA hereby agrees to use its professional skills, knowledge, and experience in preparing for and conducting the auction. The Consignor agrees to turn over to DMA, to be sold at public auction, the items listed on inventory records or in photographs, which are incorporated herein as if attached to this Agreement. Consignor agrees to cooperate and complete, sign, and date all appropriate forms. Consignor represents and expressly warrants that Consignor has good title and legal rights to sell all items listed on inventory records or in photographs, and that all items are free from all liens, claims and encumbrances, including claims of governments and governmental agencies. Consignor warrants there is no reason Consignor believes that any item transferred is not authentic or is counterfeit. Consignor warrants that any item imported into the United States has been lawfully imported, lawfully exported from the country of origin, Consignor has made all required declarations on import or export, and has paid all required duties and taxes. Consignor agrees to indemnify, defend and hold harmless DMA and any Buyer of Consignor's items, against any and all claims, actions, damages, liabilities, and expenses (including reasonable attorney's fees) by any and all parties related to items placed with or sold at auction by DMA.  Consignor agrees to produce any or all provenance information prior to catalog publication date (approximately eight weeks prior to auction date).

Consignor shall pay all costs related to delivery of the items to DMA, including but not limited to packing and handling, freight, equipment rental, and customs duties. After DMA receives Consignor's items, Consignor agrees to not sell the items personally or withdraw the items from auction without the prior written consent of DMA. Should DMA agree to remove the items from auction, DMA will receive full commission based upon the high estimate of auction price set by DMA. DMA may remove any item from any auction for any reason, and return it to Consignor.

It is mutually agreed that all items will be sold to the highest bidder. Consignor agrees not to bid on any of Consignor's own items, and will not instruct or allow any other party to do so on Consignor's behalf.  If there is a violation of this provision, Consignor agrees to pay DMA the buyer's premium in addition to all Agreement obligations. Consignor agrees to allow DMA to accept and execute absentee bids in a competitive manner for potential buyers under DMA's absentee bidding terms and conditions. DMA will deposit all proceeds from sales at auction into an account from which DMA will pay Consignor. DMA may distribute from this account at the sale conclusion all commissions, buyer's premiums, and expenses associated with auction of Consignor's items. DMA may deduct its

commission irrespective of the Buyer's premium on the gross sales from the auction. DMA agrees to pay net proceeds and provide sales records from the auction on the 45th day following the auction. DMA's obligation to pay net proceeds is subject to receipt of good funds from Buyer. In the event DMA does not receive payment for an item from Buyer, no payment shall be due to Consignor from DMA. DMA may reconsign any unsold or unpaid item to a future auction at DMA's discretion. Consignor is responsible for all obligations and costs associated with the return of any item.

DMA has sole and absolute discretion as relates to the items, before and after the auction, as to: experts consulted, research done into provenance, grouping of items into lots, creation of catalog descriptions, methods for marketing and promotion, conduct of the auction, T&C of auctions, and choice of date or date for auction. DMA may postpone an auction for any reason.  DMA will not be liable to Consignor for any errors or omissions in catalogs or other marketing descriptions. DMA makes no warranties or representations to Consignor with respect to the items, including but not limited to their selling price, authenticity, rareness or condition. Auction catalog estimates are only an approximation of potential bids, and Consignor agrees that DMA makes no representation or warranty as to whether an item will sell, or the amount of its final selling price. There are no limitations on DMA's use or reproduction of photographs of any items. DMA at its sole discretion will determine the number and type of photographs included in catalogs. DMA retains copyright on all catalogs and material included therein.

All Consignor warranties, representations, and indemnity will survive completion of all transactions related to this Agreement.  Consignor agrees that this Agreement shall be construed under the laws of the Commonwealth of Pennsylvania. Consignor waives the right to a jury trial.  Consignor consents to jurisdiction in the Court of Common Pleas of Lancaster County, Pennsylvania for any dispute relating to this Agreement. The invalidity of any part of this Agreement will not affect the remainder of this Agreement.  This Agreement is binding upon Consignor and Consignor's heirs, beneficiaries, successors, assigns, and executors.  Consignor will not assign this Agreement without DMA's prior written consent.  This Agreement and any written addendums represent the entire Agreement between the parties, and supersedes all prior or contemporaneous written, oral or implied understandings, representations, or agreements.

In witness whereof, and intending to be legally bound hereby, the parties have executed this Agreement on the date set forth here.

## SIGNATURE

(x) ___Thomas M Weber___
**Consignor Signature**

(x) ___Thomas M Weber___
**Consignor Printed Name**

(x) ___Terry M Weber 3017___
**Date (MM/DD/YY)**

(x) _____
**Authorized DMA Representative**

(x) ___Dan Morphy___
**Representative Printed Name**

___1 / 5 / 2017___
**Date (MM/DD/YY)**